**NOT FOR PUBLICATION**                                                      **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                      :
LYNN VICARO, for JOSEPH L. VICARO,                    :
deceased,                                             :
                                                      :
                                    *Plaintiff*,      :        Civ. No. 06-2827 (JAP)
                                                      :
                    v.                                :
                                                      :        **OPINION**
COMMISSIONER OF SOCIAL SECURITY,                      :
                                                      :
                                    *Defendant*.      :
_____:

APPEARANCES:

Sheryl Gandel Mazur, Esq.
195 Fairfield Avenue, Suite 2C
West Caldwell, NJ 07006
        *Attorney for Plaintiff*

Christopher Christie
United States Attorney
Adreea Laura Lechleitner
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
        *Attorneys for Defendant*

PISANO, District Judge.

        Before the Court is an appeal by Lynn Vicaro ("Ms. Vicaro") for Joseph Vicaro, Jr.[1]

("Plaintiff") from the Commissioner of Social Security Administration's ("Commissioner") final

_____

[1]  Plaintiff died on or about December 31, 1999; Plaintiff's ex-wife Ms. Vicaro is pursuing this
appeal on Plaintiff's behalf.  (R. 756).

decision denying Plaintiff's request for Social Security disability insurance ("SSDI") benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423.  The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g).  For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.   BACKGROUND

### A.   Plaintiff's Personal and Medical History

Plaintiff was born on January 28, 1957 and had a high school education.  (Administrative Record ("R.") 64, 92).  Plaintiff worked as an automobile glass installer from 1977 to 1988.  (R. 102).  On March 25, 1988, Plaintiff was involved in an automobile accident, causing him to sustain multiple injuries.  Those injuries included fractures of the left femur, left patella, and left ulna; a fractured left hip; multiple rib fractures; a fractured femoral head; and a flailed chest with hemoperitoneum.  (R. 149-50).  Following his hospital stay, attending physician, Richard Jacobs, M.D., transferred Plaintiff to the Kessler Institute for Rehabilitation where he received further treatment and was diagnosed with reactive depression.  (R. 155).  Following the accident, Plaintiff did not engage in employment until 1992.  Also, as a result of that accident, which caused the death of another driver, Plaintiff pled guilty, on June 1, 1989, to third-degree vehicular homicide, in violation of N.J.S.A. 2C:11-5, a felony offense.

Also in June 1989, Plaintiff underwent surgery for myositis ossificans to the right hip. Dr. Jacobs subsequently released him with a diagnosis of "[s]tatus post multiple fractures[, m]yositis ossificans right hip[, s]tatus post fracture dislocation right hip joint[, a]nd status post fracture left femur, left ulna."  (R. 162-63).  In a note dated October 31, 1989, Plaintiff's treating physician, William C. Sloan, M.D., advised the Sheriff of the Passaic County Jail, where Plaintiff

was incarcerated, that Plaintiff had a history of Crohn's disease, which mandated that Plaintiff receive treatment from a gastroenterologist or a knowledgeable internist.  (R. 233).

In April 1991, Brian E. O'Byrne, M.D., treated Plaintiff for his Crohn's disease at the St. Francis Medical Center in Trenton, New Jersey.  (R. 164-65).  Also, in a letter dated June 13, 1991, Dr. Jacobs informed Plaintiff's insurance company that Plaintiff's then-current symptoms were "secondary to either chondromalacia or post traumatic arthritis with loose bodies, and secondary to his fractured patella."  Dr. Jacobs also noted that Plaintiff had felt pain in the left knee for the previous two years.  (R. 284-85).  The following month, on July 15, 1991, Dr. Jacobs sent a letter to the Department of Labor, stating that Plaintiff was "not capable of physical labor, but he [was] capable of sedentary employment."  (R. 286).  Notably, the doctor added that Plaintiff was "not capable of climbing or pro-longed walking."  (R. 286).

From January 1992 to February 1992, Plaintiff was seasonally employed by a landscaping company to remove snow.  On May 26, 1992, Albert R. Griffith, Ed.D., at the request of the Division of Vocational Rehabilitation, evaluated Plaintiff and issued a psychological report dated June 8, 1992.  (R. 128-31).  Dr. Griffith diagnosed Plaintiff with having a Global Assessment of Functioning ("GAF")[2] rating of 60.[3]  Dr. Griffith also reported that Plaintiff suffered from some mental problems that included anger, a sense of victimization, and distrust of others.  (R. 130).  The following month, on June 22, 1992, Plaintiff sought the treatment of Louis A. Tartaglia,

---

[2]  The GAF is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate an individual's psychological, social, and occupational functioning levels.  *See* Diagnostic and Statistical Manual of Mental Disorders-IV-TR ("DSM-IV-TR").

[3]  A GAF rating of 60 indicates moderate symptoms and moderate social and occupational difficulties.  *See* DSM-IV-TR.

3

M.D., a psychiatrist.  (R. 437).  Dr. Tartaglia initially diagnosed Plaintiff as suffering from post-traumatic stress disorder and major depression.  (R. 437).

On June 8, 1993, Plaintiff was involved in another accident, while driving a motorcycle. (R. 185).  As a result, Plaintiff suffered fractures to his left ankle and his rib, and was hospitalized at Clara Maass Medical Center ("Clara Maass") in Belleville, New Jersey, from June 8 to June 10.  (R. 187).  On June 8, 1993, Dr. Tartaglia composed a consultation report, which noted that Plaintiff had been taking Nardil and Sinequan, medications prescribed to treat major depression.  The report evaluated Plaintiff's mental status as being "fully alert and oriented" without any "evidence of any hallucinations or delusions."  Dr. Tartaglia further noted that Plaintiff had "[n]o formal thought disorder[; n]o obsessions, compulsions."  (R. 187).  In a second consultation report dated July 8, 1993, Dr. Tartaglia noted that Plaintiff had "mildly exaggerated startle, some panic attacks and avoidance symptoms relative to the most recent motorcycle accident[.]"  (R. 222).

In a letter dated May 2, 1994, Plaintiff's treating orthopaedist, Robert J. Lorello, M.D., indicated that he originally treated Plaintiff for an excision of a foreign body located in his right knee, while Plaintiff was undergoing surgery at Clara Maass on July 9, 1993.  (R. 306).  Dr. Lorello also noted that, on January 3, 1994, he diagnosed Plaintiff with having a possible herniated disc.  The doctor, however, noted that, on January 12, 1994, testing for a herniated disc revealed unremarkable findings, and, as a result, he canceled the planned surgery.  (R. 306).

During a November 12, 1994 psychiatric evaluation conducted by psychiatrist Dr. Grosso, Plaintiff reported that his activities were severely limited since his 1988 accident and that he suffered from irritability due to the loss of mobility and his unemployment problems.  (R.

4

312).  In his report, Dr. Grosso observed that Plaintiff was "alert, clear and coherent" and did not

appear "openly dysphoric."  (R. 312).  Plaintiff also was evaluated by psychiatrist Robert T.

Latimer, M.D., on January 11, 1995.  (R. 315).  Dr. Latimer reported that, although Plaintiff "was

depressed, anxious, restless, apprehensive, weak, frail, tired-looking, and over talkative," he

showed no sign of delusions, hallucinations, phobias, obsessions, or "other gross

misinterpretations of reality."  (R. 316).  Plaintiff informed Dr. Latimer that he had been

depressed ever since the 1988 accident.  (R. 316).

At the June 1995 and August 1998 hearings before an administrative law judge, medical

expert, Albert G. Mylod, M.D., an orthopedist, testified as to his Physical Capacities Evaluation

of Plaintiff.  (R. 398-99, 682-92, 714-17).  Dr. Mylod testified that, following the 1993 accident,

Plaintiff's complaints were related mostly to his knee and hip injuries caused by the 1988

accident.  (R. 715-16).  He further testified that the major injuries from the 1993 accident, a torn

meniscus in the right knee and a fractured left ankle, were treated and resolved with no residual

effects.  (R. 716).

On August 31, 1995, Plaintiff voluntarily sought psychological treatment from James W.

Grubb, Ph.D.  (R. 417).  Dr. Grubb's September 13, 1995 evaluation noted that Plaintiff believed

his depressive symptoms arose from the 1988 accident.  (R. 415).  Dr. Grubb diagnosed Plaintiff

with a GAF rating of 40,[4] but noted that "[t]he client's agenda appears to be to receive treatment

with a stronger medication (Sinequan) and to increase his chances for SS[D]I."  (R. 417).

On March 28, 1995, Plaintiff was admitted to the Clara Maass Emergency Room with

---

[4]  A GAF rating of 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work, family relations, judgment, thinking, or mood.  *See* DSM-IV-TR.

"closed head trauma" after unknown individuals robbed and assaulted him.  (R. 363-97).

Plaintiff underwent surgery for a fractured jaw and dental debridement, and the attending

physician, Martin Turk, M.D., noted Plaintiff's "postoperative course was essentially

unremarkable."  (R. 365).  The hospital discharged Plaintiff two days later.  (R. 365).

### B.    Procedural History

Plaintiff applied for SSDI benefits on January 6, 1994, alleging that he was disabled due

to the hip and leg injuries sustained in the two accidents, in addition to his Crohn's disease.  (R.

96, 108, 112-16).  Plaintiff originally alleged his disability commenced on March 25, 1988 as a

result of his first motor vehicle accident.  However, at the August 11, 1998 hearing, he amended

his disability onset date to June 1, 1993.  (R. 732).  Plaintiff's application was denied initially

and on reconsideration.

After holding a hearing, the Administrative Law Judge Ralph J. Muehlig ("ALJ")

determined that Plaintiff was not entitled to benefits and issued his findings in a written decision

dated March 29, 1996.  (R. 73-75, 421-29).  The ALJ found that Plaintiff's "capacity for the full

range of sedentary work has not been significantly compromised" by his alleged disabilities.  (R.

427).  The ALJ also found that, although Plaintiff suffered from "status post multiple fractures"

and "post-traumatic stress disorder," those impairments, considered alone or together, do not

meet the impairments listed in Appendix 1, Subpart P of 20 C.F.R. § 404 ("the Listings").  In

addition, the ALJ discredited Plaintiff's allegations of the severity of his impairments and

determined that his Residual Functional Capacity ("RFC") was only "minimally reduced."  For

those reasons, the ALJ concluded that Plaintiff was not "disabled" within the meaning of the

Social Security Act.  (R. 427-28).

6

Following a request for review, on June 4, 1998, the Appeals Council vacated the March 29, 1996 opinion and remanded Plaintiff's case back to the ALJ.  The Appeals Council instructed the ALJ to: (1) verify which of Plaintiff's injuries had been caused or aggravated during activities related to a 1989 felony conviction,[5] and, if necessary, retain an expert to do so; (2) exclude those limitations for the purposes of determining a period of disability and disability insurance; (3) update Plaintiff's medical evidence to complete the record; (4) evaluate the testimony of Ms. Vicaro; and (5) as required by the modified record, obtain evidence from a vocational expert ("VE") by posing hypothetical questions reflecting Plaintiff's specific capacity/limitations.  (R. 453-54).

Accordingly, the ALJ held a supplemental hearing on August 11, 1998.  In a September 24, 1998 opinion, the ALJ again concluded that Plaintiff was not entitled to benefits, as he was not "disabled."  Specifically, the ALJ found that: (1) Plaintiff did not have any impairments or combination of impairments, unrelated to the felony, that "had more than a slight affect on his ability to perform basic work-related activities on or before September 30, 1994;" and (2) Plaintiff maintained a RFC sufficient to perform sedentary work.  (R. 9-26, 695-735).  Again, Plaintiff requested a review of that decision, which the Appeals Council denied on May 31, 2001. (R. 6-7).  During the pendency of Plaintiff's request for a review with the Appeals Council, Plaintiff died on December 31, 1999, and Ms. Vicaro was substituted as the party in interest.

On July 20, 2001, Ms. Vicaro filed a complaint with the United States District Court District of New Jersey.  On September 25, 2002, the Court remanded the case to the Commissioner, pursuant to the parties' stipulation and in accordance with 42 U.S.C. § 405(g).

---

[5]  20 C.F.R. § 404.1506(a) specifically excludes from consideration any impairments suffered from activities that relate to a felony conviction.

(R. 764-66).  Accordingly, on November 12, 2002, the Appeals Council issued an order remanding Plaintiff's case to the ALJ.  The Appeals Council instructed the ALJ to consider new evidence obtained from a VE and to evaluate Plaintiff's RFC in light of his GAF ratings of 60 and 40, as determined on May 26, 1992 and September 13, 1995, respectively.  (R. 815-16).

On January 21, 2004, the ALJ issued a third opinion in which he again determined Plaintiff was not entitled to benefits.  The ALJ found that Plaintiff's impairments, although being severe, did not meet any of the impairments in the Listings.  In addition, the ALJ, relying on a VE's testimony, concluded that an adequate number of suitable jobs existed in the United States economy which Plaintiff could perform despite his limitations.  (R. 762).  Addressing the Appeals Council's instructions, the ALJ noted that Plaintiff's GAF ratings of 60 and 40 do "not provide any suggestion of greater mental compromise than already assessed[.]"  (R. 761).

Ms. Vicaro then requested a review of the ALJ's decision with the Appeals Council, which, on October 24, 2005, assumed jurisdiction of the case and issued its own decision.  (R. 861).  After reviewing the challenges to the ALJ's opinion, the Appeals Council also concluded that Plaintiff was not "disabled" within the meaning of the Social Security Act.  Initially, the Appeals Council amended Plaintiff's date of last insured to be September 30, 1995 and found that Plaintiff had not been gainfully employed, despite the ALJ's finding otherwise.  Nonetheless, the Appeals Council adopted the remainder of the ALJ's findings and extended them through the amended eligibility date of September 30, 1995.  (R. 864).  To challenge the Appeals Council's conclusions, Ms. Vicaro filed the present action with this Court pursuant to 42 U.S.C. § 405(g).

Ms. Vicaro challenges the Appeals Council's opinion by claiming that it erred (1) in its evaluation of the severity of Plaintiff's mental impairments and in attributing those impairments

to the accident which resulted in a felony conviction; (2) in failing to set forth a reason for rejecting Dr. Lorello's 1994 report or Ms. Vicaro's testimony; and (3) in failing to establish that there is other work in the national economy that Plaintiff could have performed. The Commissioner responds that both the ALJ's and Appeals Council's decisions are supported by substantial evidence and therefore should be affirmed.

## II.    DISCUSSION

### A.    Standard of Review

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The inquiry is not whether the reviewing court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See ibid.* Substantial evidence, therefore, may be slightly less than a preponderance. *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

Nonetheless, the reviewing court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As such, "a court must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted). The Commissioner has a corresponding duty to facilitate the Court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent

9

evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  As the Third Circuit has

instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court

review:

> unless the [Commissioner] has analyzed all evidence and has sufficiently explained
> the weight he has given to obviously probative exhibits, to say that his decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotations and footnote omitted).

However, the Court is not "empowered to weigh the evidence or substitute its conclusions for

those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

**B.      Establishing a Disability Under the Act**

To be eligible for SSDI benefits, a claimant must demonstrate an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  A person

is disabled for these purposes only if his physical and mental impairments are "of such severity

that he is not only unable to do his previous work[,] but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the

national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation procedure to

determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the

claimant must establish (1) that he has not engaged in "substantial gainful activity" since the

onset of his alleged disability, and (2) that he suffers from a "severe impairment" or

10

"combination of impairments."  20 C.F.R. § 404.1520(a)(4)(i)-(ii).  Given that the claimant bears

the burden of establishing these first two requirements, his failure to meet this burden

automatically results in a denial of benefits, and the Court's inquiry necessarily ends there.

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (delineating the burdens of proof at each step of

the disability determination).

 If the claimant satisfies his initial burdens, he must provide evidence that his impairment

is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("the

Listing").  20 C.F.R. § 404.1520(d).  Upon such a showing, he is presumed to be disabled and is

automatically entitled to disability benefits.  *Ibid*.  If he cannot so demonstrate, the benefit

eligibility analysis requires further scrutiny.

 The fourth step of the analysis focuses on whether the claimant's Residual Functional

Capacity ("RFC") sufficiently permits him to resume his past relevant work.  20 C.F.R. §

404.1520(e)-(f).  Again, the burden lies with the claimant to show that he is unable to perform his

past work.  *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).  If the claimant is found to be

capable to return to his previous line of work, then he is not "disabled" and not entitled to

disability benefits.  *Ibid*.  Should the claimant be unable to return to his previous work, the

analysis proceeds to step five.  *Ibid*.

 At step five, the burden shifts to the Commissioner to demonstrate that the claimant can

perform other substantial, gainful work.  20 C.F.R. § 404.1520(g); *Kangas v. Bowen*, 823 F.2d

775, 777 (3d Cir. 1987).  If the Commissioner cannot satisfy this burden, the claimant is

"disabled" and will receive social security benefits.  *Yuckert*, *supra*, 482 U.S. at 146 n.5.

Moreover, under the Social Security Act, proof of a disability requires objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner . . . may require." 42 U.S.C. § 423(d)(5)(A). Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section[.]" *Ibid*. Specifically, a finding that one is disabled requires

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Ibid*.

### C.    Analysis

Ms. Vicaro challenges the October 24, 2005 Appeals Council opinion in that, in her view, erred in its consideration of Plaintiff's mental limitations. In addition, Ms. Vicaro argues that both the ALJ and the Appeals Council committed reversible error by failing to set forth any reason for rejecting the report submitted by Robert J. Lorello, M.D., Plaintiff's treating orthopedist. Finally, Ms. Vicaro contends that the Commissioner did not meet his burden to establish that Plaintiff could have performed other work available in the national economy. Specifically, Ms. Vicaro submits that the ALJ improperly relied on improper and incorrect testimony by the VE.

### 1.    *Plaintiff's Mental Limitations*

Ms. Vicaro argues that the Appeals Council should have found that Plaintiff's mental limitations were "severe" and did not arise solely from his commission of a felony in 1988.

Moreover, Ms. Vicaro contends that the Appeals Council erred in failing to follow the procedure set forth in 20 C.F.R. § 404.1520a.  Ms. Vicaro also submits that the Appeals Council erred by failing to consider her testimony before the ALJ on December 19, 2003, which related to Plaintiff's mental state after his 1993 accident.

In its decision, on October 24, 2005, the Appeals Council found that, "but for the impairments arising in connection with [Plaintiff's] 1988 felony, he was mentally capable of simple repetitive tasks."  (R. 863).  Indeed, the Appeals Council stated, after considering the evidence of Plaintiff's mental condition, that, "[v]iewed longitudinally, except for a brief period in June and July 1993[,] the weight of the evidence is contrary to the view set out in [Plaintiff's] exceptions, that [Plaintiff] had disabling mental limitations independent of the impairments arising in connection with his 1988 felony."  (R. 864).  The Council further noted that "psychiatrists who evaluated [Plaintiff] after 1993 repeatedly emphasized how [Plaintiff's] mental status was connected to the events in 1988."  (R. 864).

Pursuant to 20 C.F.R. § 404.1506(a), the Commissioner must exclude from consideration "any physical or mental impairment . . . which arises in connection with [an applicant's] commission of a felony after October 19, 1980, if [the applicant is] subsequently convicted of this crime."  *See also* 42 U.S.C. § 423(d)(6)(A) (same).  The Appeals Council decision that Plaintiff's mental impairments were attributable to his commission of a felony must be affirmed if it is supported by substantial evidence in the record.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

The Court finds that the Appeals Council based the determination that much of Plaintiff's mental impairments stemmed from the 1988 accident on substantial evidence.  Indeed, the

Appeals Council primarily relied on the evaluations of Plaintiff's treating psychiatrist, Dr. Tartaglia.  (R. 759).  *See* 20 C.F.R. § 404.1527(d)(2) (according controlling weight to opinion of treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").  The physician's records demonstrated only small effects from the 1993 accident, while revealing a long and extensive record of treatment for Plaintiff's post-traumatic stress disorder resulting from the 1988 automobile accident.  (R. 759).

Furthermore, the Appeals Council cited the psychiatric reports issued by Dr. Grosso in December 1994 and Dr. Latimer in January 1995, which both supported a finding that Plaintiff's mental impairments arose solely from the 1988 accident.  (R. 742).  The Appeals Council also addressed Dr. Grubb's conflicting September 1995 evaluation of Plaintiff and explained its finding that his results were non-compelling.  *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (requiring ALJ to weigh treating physician's report against reports submitted by other physicians).  The Appeals Council discredited Dr. Grubb's report as being the only post-1993 psychiatric evaluation in the record that did not underscore the relation between his analysis and the 1988 events, and for its failure to reach a conclusion as to Plaintiff's diagnosis.  (R. 743).

In addition, the Court rejects Ms. Vicaro's contention that it is impossible to distinguish between the impairments arising from the felony-related 1988 accident and those arising from the non-felony 1993 accident.  Indeed, there exists sufficient evidence in the record for the ALJ, the Appeals Council, and this Court to consider which impairments must be excluded as arising out of Plaintiff's commission of a felony in 1988.

14

Ms. Vicaro also argues that the Appeals Council did not conduct the test required by 20 C.F.R. § 404.1520a, also known as the "special technique," to determine the impact of Plaintiff's mental impairments on his RFC. The applicable regulation provides that the ALJ's written decision regarding a claimant's mental impairments must include "significant history, examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(2). The ALJ must evaluate the impact of any mental impairment suffered by Plaintiff in the following four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(4). To satisfy this requirement the ALJ must include in his decision a specific finding as to the degree of limitation in each of those functional areas. 20 C.F.R. § 404.1520a(e)(2).

Ms. Vicaro submits that, because the Appeals Council issued its own independent analysis regarding the impact Plaintiff's mental impairments had on his RFC, it was required to conduct anew the "special technique" evaluation. However, the Appeals Council did not make findings separate from the ALJ in respect of Plaintiff's RFC. The Appeals Council explicitly stated in its October 24, 2006 letter to Plaintiff's Counsel that it was issuing its own decision only because the ALJ's January 2004 decision was "not substantially supported for its findings" on the two issues of the date last insured and Plaintiff's performance of substantial gainful activity. (R. 746). The Appeals Council further stated its intention to adopt the remainder of the ALJ's decision, which included the "special technique" analysis, discussing each functional area. (R.

760-61).  Therefore, the Appeals Council did not commit reversible error by failing to conduct its own "special technique" analysis.

In addition, Ms. Vicaro's claim that the Appeals Council committed reversible error in failing to consider her testimony before the ALJ lacks merit.  Ms. Vicaro's testimony at the 2004 hearing mainly served to support a finding that Plaintiff had recovered from his mental problems that arose from the 1988 accident and was ready to return to work until he had the 1993 motorcycle accident.

The ALJ must consider Ms. Vicaro's testimony in conjunction with any corroborating evidence.  20 C.F.R. § 404.1529(c)(3) states that, when evaluating other evidence besides non-objective medical evidence, "any symptom-related functional limitations and restrictions which you . . . or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account."  However, an ALJ may reject such evidence if it is not supported by objective medical evidence, provided that he give "some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

Indeed, the ALJ complied with this requirement in his 2004 opinion, which the Appeals Council adopted in its opinion.  The ALJ found that the "subjective allegations regarding the claimant's limitations are not supported by the objective medical documentation of record."  (R. 762).  He also explained in his 1998 opinion, which he subsequently adopted into his 2004 opinion, that Ms. Vicaro was separated from Plaintiff since 1989, making her testimony of little value in corroborating Plaintiff's subjective complaints of pain and disability.  (R. 19).

16

For those reasons, the Court finds that neither the ALJ nor the Appeals Council committed reversible error in their considerations of Plaintiff's mental impairments.

### 2. *Dr. Lorello's Medical Report*

Next, Ms. Vicaro challenges the failure by the ALJ and the Appeals Council to discuss the medical report submitted by Dr. Lorello, Plaintiff's orthopedic surgeon, that stated that Plaintiff "continues to be totally disabled." (R. 306). As a threshold matter, it is noted that the ALJ did not "ignore" Dr. Lorello's report, as suggested by Ms. Vicaro. In respect of Plaintiff's orthopedic injuries, the Appeals Council adopted the findings set forth by the ALJ's January 2004 opinion, which incorporated the medical evidence set forth in the September 24, 1998 opinion. (R. 741, 758). As pointed out by the Commissioner, the ALJ's September 1998 opinion addressed Dr. Lorello's report. (R. 17).

Indeed, the Commissioner must explicitly evaluate all available evidence of record and provide some explanation for the rejection of any evidence conflicting with the decision. *Adorno*, *supra*, 40 F.3d at 48. In the context of the third step of analysis under 20 C.F.R. § 404.1520(d), the Third Circuit "requires the ALJ to set forth the reasons for his decision." *Burnett*, *supra*, 220 at 119. The purpose of this requirement is to ensure meaningful review. *Ibid*. Here, the ALJ did not ignore the report submitted by Dr. Lorello, but rather incorporated it through reference. *Cf. Segal v. Barnhart*, 342 F. Supp.2d 338, 342 (E.D. Pa. 2004). Notably, 20 C.F.R. § 404.1527(e)(1) provides that the Commissioner cannot consider, for purposes of determining benefits eligibility, a physician's opinion as to the applicant's disability status. Moreover, the failure by the Appeals Council and the ALJ to specifically reference Dr. Lorello's report in their October 2005 and January 2004 opinions, respectively, does not deprive the Court of meaningful review. Indeed,

17

Plaintiff's application has been addressed on review on numerous occasions and the Court is able to determine from the extensive record the ALJ's bases for his decisions.  For that reason, neither the Appeals Council nor the ALJ committed reversible error by failing to specifically reference Dr. Lorello's report.

### 3.    *Other Work Available in the National Economy*

Finally, Ms. Vicaro argues that the Commissioner did not meet his burden of proof to establish that Plaintiff was capable of performing other available work.  According to Ms. Vicaro, the ALJ erred in relying on the VE's responses to a hypothetical question, which did not comprehensively describe Plaintiff's functional limitations.

After determining that Plaintiff could not return to his past employment as a truck driver or automobile glass worker, as required under step four of the regulatory analysis, the ALJ turned to the testimony of the VE to determine if the Commissioner could meet his burden under step five.  Specifically, the ALJ asked the VE whether an individual of Plaintiff's age, education and vocational background, limited to simple repetitive tasks at the sedentary exertional level, would be able to perform any jobs that exist in sufficient numbers in the national economy.  (R. 761). The VE responded with a list of example jobs, such as a coil inspector, weld inspector, and a ticketer, noting that there were 2,000 such jobs in the local economy and 40,000 in the national economy.  (R. 761).  Plaintiff's counsel subsequently posed to the VE several hypothetical questions that described a person with various additional limitations and inquired whether the cited jobs would still be suitable.  However, the ALJ noted that Plaintiff's hypothetical questions were irrelevant because each one referenced injuries related to the 1988 accident, which could not be considered.  (R. 761).

At step five under 20 C.F.R. § 404.1520(f), the burden of proof shifts to the Commissioner to prove that a substantial number of jobs exist in the national economy which the plaintiff could perform.  42 U.S.C. § 423(d)(2)(A); *see also Plummer*, *supra*, 186 F.3d at 428.  When a plaintiff has strictly exertional impairments, use of the Medical Vocational Guidelines ("the grids") in 20 C.F.R. § 404 Subpart P, Appendix 2 is often appropriate.  SSR 82-41, 1982 WL 31389, *1 (S.S.A. 1982); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (noting that the grids serve as framework).  An exertional limitation refers to a plaintiff's ability to exert a particular amount of force, such as lifting twenty pounds.  When a plaintiff has additional non-exertional impairments—as here where Plaintiff was unable to sit for more than six hours in an eight-hour work day and was limited in the use of his upper right extremity—the grids do not adequately describe the nature of the plaintiff's limitations and, thus, are inappropriate.  20 C.F.R. § 404.1545(d); *see also Thompson*, *supra*, 987 F.2d at 1488.

The Commissioner has a duty to identify specific jobs appropriate for Plaintiff in light of his exertional and non-exertional limitations and to show that there are a sufficient number of such jobs available in the national economy.  *See, e.g.*, SSR 96-9p, 1996 WL 374185, *5 (S.S.A. 1996).  Because such proof must be established by substantial evidence, many ALJ's use the testimony of a VE.  *See, e.g.*, *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005).

First, Ms. Vicaro argues that the ALJ failed to pose a complete hypothetical question to the VE.  The hypothetical question posed to a VE "may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments."  *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  Here, the hypothetical question posed an accurate description of Plaintiff's impairments.  (R. 761).  As

19

required, the question included Plaintiff's basic background information—such as age, education, and work experience—and his relevant impairments: a limitation to performing sedentary, simple, and repetitive tasks; involving no more than six hours of sitting during an eight-hour work day; with a restriction in the use of his right upper extremity such that he could not perform continual, repetitive fine manipulations.  Therefore, the ALJ posed a proper hypothetical question.

Second, Ms. Vicaro challenges the adequacy of the jobs suggested by the VE in that those jobs require skills and exertional levels beyond Plaintiff's capabilities.  The VE testified that each of the jobs he listed—coil inspector, weld inspector, and ticketer—were examples.  However, each of those examples contained an inconsistency with the Dictionary of Occupational Titles ("DOT").  The DOT is a publication of the United States Department of Labor and contains basic occupational information including job titles, short corresponding descriptions of the types of tasks involved in each position, and the required skill and exertional levels one must maintain to be capable of performing each job.  For example, a job listed as "light" requires the ability to exert up to twenty pounds of force at a time occasionally, or up to ten pounds of force frequently.  However, a job listed as "sedentary" requires the ability to exert ten pounds of force occasionally.

Specifically, the VE testified that someone with Plaintiff's background and limitations would be able to perform sedentary work, but gave as examples of jobs a coil inspector, weld inspector, or ticketer.  However, the DOT lists the position of coil inspector as sedentary work with a skill level higher than that which Plaintiff possessed.  In addition, the DOT lists the jobs of weld inspector and ticketer as being light work, which requires a higher exertional capacity than sedentary work.

The Commissioner argues that such an inconsistency is not clear from the record because the VE did not give the specific code number used in the DOT that associated with the jobs he listed as examples.  In the Commissioner's view, the VE could have referred to different positions listed in the DOT than the ones brought to the Court's attention by Ms. Vicaro.  Moreover, the Commissioner responds that, even if there is a discrepancy, the positions of weld inspector and ticketer, although listed as "light" jobs, could be performed at Plaintiff's "sedentary" level.  The Commissioner points out that the VE stated that these jobs were "generally done from a seated position," but, due to Plaintiff's inability to sit for more than six hours in an eight-hour work day, they could also be done while standing.  (R. 797).  Thereby, the exertional force required to perform the job could be less than that listed in the DOT.

An ALJ must address any conflicts between a VE's testimony, regarding which jobs are available to a plaintiff given his specific limitations, and the DOT in order for the VE's testimony to be considered as substantial evidence.  *Rutherford v. Barnhart*, 399 F.3d 546, 556 (3d Cir. 2005) (discussing SSR 00-4p, 2000 WL 1898704 (S.S.A. 2000), which imposed affirmative duty on ALJ to inquire about conflicts).  Indeed, a remand may be appropriate if the VE's testimony was inconsistent with the DOT listings and "no other substantial evidence existed in the record to support the ALJ's step 5 determination."  *Id.* at 557 (discussing *Boone v. Barnhart*, 353 F.3d 203, 206 (3d Cir. 2004)).  However, "inconsistencies need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result."  *Ibid.*  For example, in *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004), the Third Circuit found that the ALJ's determination at step five was based on substantial evidence, despite some inconsistencies between the VE's testimony and the DOT.  *Jones*, *supra*, 364 F.3d at 506 & n.6.  The Third

21

Circuit reasoned that the inconsistencies did not exist as to all of the jobs listed by the VE and that the VE testified that the jobs he listed were exemplary, rather than exhaustive. *Ibid.*

This Court finds that the present case is akin to the situation presented in *Jones*. First, the VE testified that the three enumerated positions were merely examples, and not an exhaustive list, of the sedentary work Plaintiff could have performed. *See Jones*, *supra*, 364 F.3d at 506. Second, although there might be inconsistencies between the VE's testimony and the DOT, those inconsistencies are slight and cannot be determined "egregious enough—either in number or in substance—to bring into question the ALJ's reliance on the expert testimony as a whole." *Rutherford*, *supra*, 399 F.3d at 558. The Court notes that the inconsistency alleged by Ms. Vicaro in respect of the position of coil inspector involves only a one level difference in the required specific vocational preparation ("SVP")—that is, the amount of time required to learn a job—and Plaintiff's SVP. In addition, the Court finds that the VE appropriately addressed the discrepancies between the exertional force required in the position of a weld inspector or a ticketer and the exertional force Plaintiff was able to perform by noting that Plaintiff could be accommodated by sitting and/or standing throughout the day. Therefore, although some insignificant inconsistencies may exist between the VE's testimony and the DOT, the Court concludes that the VE's testimony provided substantial evidence for the ALJ's conclusion as to step five.

## III.   CONCLUSION

For the reasons expressed above, the Court affirms the Commissioner's decision, as it is supported by substantial evidence in the record. An appropriate order follows this Opinion.

/s/ JOEL A. PISANO

22

_____          Joel A. Pisano
                                         United States District Judge